1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9              FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11  *In re* Applications of:                         No.    C 11-80171 CRB
                                                             C 11-80172 CRB
12  THE REPUBLIC OF ECUADOR and DR.
    DIEGO GARCIA CARRION, the Attorney        **ORDER GRANTING 28 U.S.C. § 1782**
13  General of the Republic of Ecuador,       **APPLICATIONS AND DENYING**
                                              **MOTION TO STAY**
14                              Applicants,

15  For the Issuance of Subpoenas Under 28
    U.S.C. § 1782 to Dr. Michael A. Kelsh and
16  Exponent, Inc. d/b/a Delaware Exponent,
    Inc.,
17
                                Respondents.
18  _____/

19

20          Now pending before the Court are two 28 U.S.C. § 1782 Applications by the Republic

    of Ecuador and Dr. Diego Garcia Carrion, the Attorney General of the Republic of Ecuador,
21
    ("Applicants"), seeking the issuance of subpoenas to Dr. Michael A. Kelsh and to Exponent,
22
    Inc., Kelsh's former employer.[1]  See Case No. 11-80171 App. (dkt. 1); Case No. 11-80172
23
    App. (dkt. 1).  As explained below, the Court finds that Applicants have met their minimal
24
    burden under § 1782 and so their Applications will be granted.  The Court further finds that
25
    the Motion to Stay filed by Intervenor Chevron Corporation, Dr. Kelsh and Exponent (for the
26

27  _____

28          [1] Applicants have filed nearly identical Applications because, they explain, they believe that Dr.
    Kelsh has recently left Exponent and they wish "to ensure that all documents related to Dr. Kelsh's work
    for Chevron, including his report, are produced, whether they belong to Dr. Kelsh or to Exponent."
    See Case No. 11-80172 Mem. (dkt. 2) at 2 n.2.  This Order will not distinguish between the two
    Applications unless relevant.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1  sake of simplicity the Court will refer to all three as "Respondents"), Case Nos. 11-80171

2  and 11-80172 Mot. (dkt. 29), is without merit, and will deny that Motion.

3  **I.      BACKGROUND**

4         Although their views on both subjects are diametrically opposed, the parties are well

5  familiar with both the history of Chevron's oil exploration in Ecuador, and the various legal

6  disputes resulting therefrom.  See Case No. 11-80171 Mem. (dkt. 2) at 4-18; Opp'n (dkt. 23)

7  at 4-10.  The Court will therefore not endeavor to recount those histories here, but will focus

8  instead on the narrow issue before it: the Applicants' desire to take discovery from Dr. Kelsh

9  and Exponent to use in Chevron Corporation and Texaco Petroleum Corporation v. The

10  Republic of Ecuador, PCA Case No. 2009-23, the Bilateral Investment Treaty ("BIT")

11  arbitration.

12         During the course of the Lago Agrio litigation, Chevron relied on the reports of Dr.

13  Kelsh, then an employee of Exponent, to rebut the Lago Agrio plaintiffs' expert reports about

14  environmental pollution.  Mem. (dkt. 2) at 1-2.  Specifically, Dr. Kelsh disagreed with the

15  plaintiffs' arguments that environmental contamination resulted in increased cancer deaths

16  and other health problems to the indigenous population, and that Chevron should pay for new

17  healthcare and medical monitoring infrastructure.  Id. at 2.  Nonetheless, as part of its multi-

18  billion dollar judgment against Chevron, the Lago Agrio court ordered Chevron to pay $1.4

19  billion for a new healthcare infrastructure and $800 million for cancer treatment.  Id. at 14-

20  15.

21         Chevron subsequently referenced and submitted at least two of Dr. Kelsh's expert

22  reports from the Lago Agrio action in the BIT arbitration.  See Bloom Decl. (dkt. 4) Exs. 49,

23  50.  Chevron used Kelsh's reports, among other expert reports, to dispute the validity of the

24  Lago Agrio plaintiffs' expert and to argue that the scientific evidence in the Lago Agrio trial

25  record so strongly supported Chevron's position that that court's decision could only have

26  been based on fraud and/or corruption.  See Dettmer Decl. (dkt. 23-1) Ex. 19 (Claimant's

27  Memorial on the Merits) ¶ 1 ("This singular investment dispute arises from an

28  unprecedented, fraudulent, and corrupt campaign of legally and factually baseless civil

2

United States District Court
For the Northern District of California

1  litigation and bad-faith criminal prosecution . . .”); ¶ 141 (“Chevron's experts conducted

2  analyses of a broad range of chemical components indicative or potential risk to human

3  health . . . . The results of this comprehensive risk evaluation showed that the soil, sediments

4  and water affected by the Consortium's historical oilfield operations do not pose a

5  measurable risk to the health of local residents or workers.”); ¶ 240 (“Chevron retained

6  experts who – unlike Mr. Cabrera – are highly qualified in the subject matters covered in the

7  two Cabrera reports.  Each of these experts prepared and filed detailed rebuttals, enumerating

8  the many flaws in the facts, methodologies, and conclusions contained in the Cabrera

9  reports”).[2]

10  Applicants now seek to take discovery from Dr. Kelsh and Exponent for use in the

11  BIT arbitration.  See Case No. 11-80171 App. (dkt. 1); Case No. 11-80172 App. (dkt. 1).

12  Respondents oppose, see Opp'n (dkt. 23), and move the Court to stay the Applications

13  pending a discovery ruling by the treaty arbitration tribunal, see Mot. (dkt. 29).

14  **II.    DISCUSSION**

15  This Order will discuss the two Applications and then, briefly, the Motion to Stay.

16  **A.    The § 1782 Applications**

17  **1.    Authority to Issue Subpoenas**

18  A district court may grant an application under 28 U.S.C. § 1782 where (1) the person

19  from whom discovery is sought resides or is found in the district of the district court to which

20  the application is made; (2) the discovery is for use in a foreign tribunal; and (3) the

21  application is made by a foreign or international tribunal or “any interested person.”  28

22  U.S.C. § 1782.  Respondents do not dispute that these statutory requirements have been met.

23  See Opp'n (dkt. 23) at 10 (arguing only as to discretionary factors).

24  In addition, the Court finds that the statutory requirements have been met.  First,

25  Exponent maintains an office in Menlo Park, California, which is in this district.  See Case

26  No. 11-80172 Mem. (dkt. 2) at 18 (citing Bloom Decl. Ex. 45).  Dr. Kelsh resides in

27

28  _____

[2] Chevron, Dr. Kelsh and Exponent add that Chevron “included among the 306 exhibits” attached to Chevron's Memorial on the Merits the two expert reports by Dr. Kelsh because it is standard practice to submit reference materials in arbitral proceedings.  Opp'n (dkt. 23) at 10.

United States District Court
For the Northern District of California

1   Pleasanton, California, and resides in San Francisco, California, both of which are in this

2   district.  See Case No. 11-80171 Mem. (dkt. 2) at 18 (citing Bloom Decl. Ex. 45).  Second,

3   the discovery Applicants seek from Kelsh and Exponent is intended for use in the BIT

4   arbitration.  Mem. (dkt. 2) at 18; In re Republic of Ecuador, No. C-10-80225 MISC CRB

5   (EMC), 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("arbitration pending in a

6   tribunal established by an international treaty constitutes a foreign tribunal for purposes of §

7   1782.").  And third, Applicants are interested persons, as the Republic of Ecuador is the

8   Respondent in the arbitration, see Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S.

9   241, 256 (2004) ("No doubt litigants are included among, and may be the most common

10  example of, the 'interested person[s]' who may invoke § 1782."), and Dr. Carrion is the legal

11  representative of the Republic in the arbitration, see In re Application of the Republic of

12  Ecuador, 2010 WL 4973492, at *5; In re Letter of Request from Crown Prosecution Serv.,

13  870 F.2d 686, 690 (D.C. Cir. 1989).

14      Nonetheless, a court "is not required to grant" an application "simply because it has

15  the authority to do so."  See Intel, 542 U.S. at 264.

16      **2.     Discretionary Factors**

17      The Supreme Court instructs district courts to consider four discretionary factors when

18  evaluating 1782 Applications: (1) whether the person from whom discovery is sought is a

19  participant in the foreign proceedings; (2) the nature and character of the foreign proceedings

20  and whether they will be receptive to the court's assistance; (3) whether the discovery is an

21  attempt to circumvent foreign proof-gathering restrictions; and (4) whether the discovery will

22  be unduly intrusive or burdensome.  See Intel, 542 U.S. at 264-65.  Respondents here dispute

23  three of the four discretionary factors.  See Opp'n (dkt. 23) at 10-19.

24      As to the first factor, "when the person from whom discovery is sought is a participant

25  in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it

26  ordinarily is when evidence is sought from a nonparticipant."  Intel, 542 U.S. at 264.

27  Respondents do not assert that Dr. Kelsh and Exponent are participants; rather, they argue

28  that the materials Applicants seek are otherwise available to the Tribunal.  Opp'n (dkt. 23) at

**United States District Court**
For the Northern District of California

1    11-12 (citing <u>In re Request for Judicial Assistance</u>, 748 F. Supp. 2d 522, 526 (E.D. Va.

2    2010)).  However, in seeking to demonstrate that availability, Respondents cite to rules

3    relating to parties, <u>see</u> Opp'n (dkt. 23) at 12 (citing, e.g., UNCITRAL Arbitration Rules Art.

4    24.3 (1976) ("'At any time during the arbitral proceedings the arbitral tribunal may require

5    the parties to produce documents'"), and Dr. Kelsh and Exponent are not parties to the

6    arbitration.  The Court understands that the Tribunal has the power to order party participants

7    to produce documents.  <u>See</u> International Bar Association Rules on the Taking of Evidence in

8    International Arbitration, Art. 3.2, 3.3; UNCITRAL Arbitration Rules, Art. 24.3.  However,

9    the Court's review of the procedure Respondents point to as "governing document

10   production from non-parties," <u>see</u> Opp'n (dkt. 23) at 14, premises involvement by the

11   Tribunal on a party's not being able to obtain the documents on its own.  <u>See</u> International

12   Bar Association Rules on the Taking of Evidence in International Arbitration, Art. Article

13   3.9.[3]  Obtaining documents "on [their] own" is what Applicants are seeking to do here,

14   appropriately.  <u>See also</u> <u>In re Application of the Republic of Ecuador</u>, No. 4:11-mc-00073-

15   RH/WCS at 6 (N.D. Fla. Aug. 24, 2011) (similarly interpreting "on its own" language).

16   Respondents further argue that "because Dr. Kelsh was retained by Chevron to work

17   in the Lago Agrio litigation, his documents regarding his work for Chevron are within

18   Chevron's control."  Opp'n (dkt. 23) at 12.  That argument is unconvincing, however, as it

19   relies entirely on <u>Alper v. United States</u>, 190 F.R.D. 281, 283 (D. Mass. 2000), a case in

20   which the District of Massachusetts found that under Federal Rule of Civil Procedure 34, a

21   party is deemed to be in control of the documents of its testifying expert.  But Respondents

22   point to no authority suggesting that the Federal Rules apply to the BIT arbitration, they

23   explicitly state that "Chevron has not designated Dr. Kelsh as an expert witness who will

24   testify in the Treaty Arbitration," <u>see</u> Opp'n (dkt. 23) at 10, they do not represent that

25

26

27   _____

         [3] Article 3.9 begins: "If a Party wishes to obtain the production of Documents from a person or
28   organisation who is not a Party to the arbitration and from whom the Party cannot obtain the Documents
     on its own, the Party may, within the time ordered by the Arbitral Tribunal, ask it to take whatever steps
     are legally available  to obtain the requested Documents. . ."

1    Applicants could take Dr. Kelsh's deposition through the arbitral procedures, and they have

2    not represented that Chevron has control over <u>all</u> of the documents sought in the subpoena.[4]

3        The first factor therefore weighs in the Applicants' favor.

4        As to the second discretionary factor, there is no evidence before the Court of whether

5    the foreign Tribunal will be receptive to the Court's assistance. The Court notes, however,

6    that Chevron has apparently sought extensive 1782 applications of its own before other

7    United States courts and thereby either implicitly or explicitly asserted receptivity. <u>See, e.g.</u>,

8    <u>In re Application of Chevron Corp.</u>, No. 10-4699, 2011 WL 2023257, at n.7 (3d Cir. May 25,

9    2011) (stating that Chevron has taken over twenty similar 1782 depositions); <u>In re</u>

10   <u>Application of Chevron</u>, Case No. 10-mi-76-TWT, at *9-10 (N.D. Ga. Mar. 2, 2010)

11   (granting Chevron's 1782 application for discovery from plaintiffs' expert in <u>Lago Agrio</u>

12   case); <u>see also</u> <u>In re Republic of Ecuador</u>, 2010 WL 3702427, at *4 ("Chevron has made §

13   1782 requests before other U.S. federal courts . . . and does not appear to have made any

14   contention that the arbitral tribunal would not be receptive."). The second factor is therefore

15   either neutral or slightly favors the Applicants.

16       As to the third discretionary factor, Respondents assert that the Applications are an

17   attempt to circumvent foreign proof-gathering restrictions. <u>See</u> Opp'n (dkt. 23) at 13-14.

18   Respondents charge Applicants with resisting discovery in the BIT arbitration, "stating [they]

19   would 'not incur the expense of instructing [their] lawyers to proceed to the merits of this

20   case unless and until [they are] obliged to do so,'" while simultaneously asking this Court to

21   step in and initiate discovery. <u>Id.</u> at 14; Mot. (dkt. 29) at 2 ("ROE is speaking out of both

22   sides of its mouth – seeking 'urgent' one-sided discovery in U.S. Courts for use in the Treaty

23   Arbitration, while at the same time arguing to the Tribunal that mutual discovery in the

24

25

26

----

27   [4] <u>See, e.g.</u>, Subpoena (dkt. 1 Ex. 1) at 8 ("Copies of any expert reports, declarations, affidavits,
     deposition transcripts, trial transcripts, hearing transcripts, arbitration transcripts or any other transcript
28   of any testimony or any document you authored that YOU have offered as an expert at any time during
     the last ten years, regardless of the nature of the dispute.").

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   Treaty Arbitration is premature and inappropriate.").  Respondents further accuse Applicants

2   of forum-shopping.  Opp'n (dkt. 23) at 13-14.[5]  The Court disagrees with Respondents.

3   As already discussed, Respondents point to no arbitration guidelines relating to

4   obtaining discovery from third parties that are in conflict with what Applicants are doing

5   herein.  See International Bar Association Rules on the Taking of Evidence in International

6   Arbitration, Art. Article 3.9 (premising involvement by the Tribunal on a party's not being

7   able to obtain the documents on its own); see also In re Application of the Republic of

8   Ecuador, No. 1:11-cv-01470-WYD-MEH at 4 (D. Colo. Aug. 9, 2011) ("[T]he Court does

9   not perceive that this request is an attempt to circumvent foreign discovery restrictions, as the

10  arbitral rules do not appear to apply to Mr. Bjorkman in the first place."); In re Application of

11  the Republic of Ecuador, No. 4:11-mc-00073-RH/WCS at 7 ("Chevron has not shown that a

12  subpoena for documents from Dr. Hinchee and a subpoena for is deposition would

13  'circumvent foreign proof-gathering restrictions or other policies' of the arbitral tribunal as

14  those words were intended in Intel.").

15  Moreover, Applicants' actions even as described by Respondents – pushing for

16  discovery through these Applications and resisting discovery before the Tribunal – is

17  consistent with Applicants' reluctance to proceed in the arbitration before its jurisdiction has

18  been satisfactorily established.  Applicants explained this "conundrum" to the Tribunal:

19      The duration of the discovery actions has created a conundrum for the Republic.  On
20      the one hand, for all of the reasons previously represented, the Republic does not wish

21      [5] These same accusations animate Chevron's Motion to Stay, which further represents that "[a]t
22   Chevron's request, the Tribunal has taken up the question of discovery procedures and schedules in the
     Treaty Arbitration," and that "[a]bsent a stay," a grant of the Applications risks conflicting with the
     Tribunal's procedure. Mot. at 2.  That is not the Court's understanding of what is happening. Chevron's
23   July 29, 2011 letter asks the Tribunal to "(1) confirm that both parties to this Arbitration will have ample
     time and opportunity to serve document requests upon each other in this Arbitration, and (2) schedule
24   a telephone conference to establish a procedural schedule for document production in this Arbitration."
     See Dettmer Decl. Ex. 5 (July 29, 2011 letter).  The Tribunal responded on August 7, 2011, by stating
25   that the first request "does not, by itself, strike the Tribunal as controversial; but before responding more
     fully," invited Applicants to respond.  See Dettmer Decl. Ex. 6 (August 7, 2011 email) at 1.
26   Respondents did, on August 12, 2011, to object to Chevron's request as premature in light of the
     Tribunal's not having yet ruled on its jurisdiction. Dettmer Decl. Ex. 4 (August 12, 2011 letter) at 1.
27   The parties have each sent additional letters to the Tribunal. See Lapping Decl. Exs. 1, 2.  To the extent
     the Tribunal has responded any further, the parties have not brought such response to the Court's
28   attention.  However, the Court would not characterize the Tribunal's August 7, 2011 email as "tak[ing]
     up the question of discovery procedures and schedules in the Treaty Arbitration." See Mot. at 2.

**United States District Court**
For the Northern District of California

1    to expend any sum on merits preparation unless this Tribunal assumes jurisdiction of
2    the dispute and identifies the remaining issues, if any.  On the other hand, in light of
     Chevron's ability to delay resolution of the discovery actions (while simultaneously
3    seeking to expedite the arbitral proceedings), a failure by the Republic to commence
     the discovery actions at this time would threaten the Republic's ability to obtain the
4    requested discovery in time for its possible use in the merits phase of the arbitration,
     should there be one.

5    Dettmer Decl. Ec. 4 (August 12, 2011 letter) at 1 n.1.  Applicants' Applications are no doubt

6    the result of strategy (one of pursuing discovery through the permissive standards of § 1782

7    rather than through an aribitral tribunal whose jurisdiction they do not concede), but that does

8    not mean they are the result of forum-shopping.  Applicants do not appear to be seeking

9    discovery for an improper purpose, but for use in the arbitral proceeding if and when it

10   reaches the merits phase.  Accordingly, this factor weighs in their favor.  See Minatec Fin.

11   S.A.R.L. v. SI Group Inc., No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y.

12   Aug. 18, 2008) (question is whether discovery is sought in bad faith).[6]

13        Finally, the fourth discretionary factor that district courts are to consider is whether

14   the Applications are "unduly intrusive or burdensome."  See Intel, 542 U.S. at 265.  Such

15   requests "may be rejected or trimmed."  Id.  The Court notes that three items in the

16   subpoenas do appear overly broad and thereby unduly intrusive: in the Exponent subpoena,

17   items 3 and 8 refer to materials prepared by Dr. Kelsh "or by any other person," and item 12

18   refers to documents "to or from . . . CHEVRON and/or . . . YOU or other experts."  See Case

19   No. 11-80172, dkt. 1 Ex. 1 at 8.  In the Kelsh subpoena, the same language appears in items

20   3, 9, and 13.  See Case No. 80171, dkt. 1 Ex. 1 at 8.  Discovery relating to anyone other than

21   Dr. Kelsh does not strike the Court as appropriate in the context of these Applications, and so

22   such language is hereby stricken from the subpoenas.  See In re Application of the Republic

23   of Ecuador, No. 4:11-mc-00073-RH/WCS at 12 (holding same).

24        Respondents argue that the subpoenas are overbroad because they seek documents

25   beyond the typical material that United States courts find relevant in assessing expert reports.

---

[6] Nor does Applicants' declination of Chevron's proposed stipulation demonstrate bad faith,
see Dettmer Decl. Ex. 7 (August 10, 2011 letter); Applicants had reasonable bases for declining (for
example, Chevron only offered to produce documents by Dr. Kelsh "to the extent ordered to do so by
the . . . Tribunal," and in exchange would have had to withdraw their pending Applications with
prejudice), see id.; Dettmer Decl. Ex. 9 (August 15, 2011 letter).

United States District Court
For the Northern District of California

Opp'n (dkt. 23) at 15.  Respondents ask the Court to apply the new and more restrictive Rule 26(b)(4)(C), and to limit Applicants' access to Dr. Kelsh's trial preparation documents.  Id. at 15-16.  Applicants respond that the old version of Rule 26 should apply, or, in the alternative, that Dr. Kelsh is a non-reporting testifying expert.  Reply (dkt. 26) at 12.  They also argue that all documents should be produced in order to expose attorney-caused bias, and add that Respondents cannot invoke privilege because they have not even provided a privilege log. Id. at 13.  The Court does not view Respondents' objections as reasons to deny the Application and agrees that they are best addressed in connection with a privilege log and some more detailed briefing.

In the meantime, the fourth factor weighs, too, in favor of Applicants.

### 3.      Conclusion as to the Applications

Based on its review of the statutory and discretionary factors, the Court finds that the Applications should be granted.[7]  Respondents are directed to make Dr. Kelsh available for a deposition forthwith, and to begin the production of documents.  Respondents may file a privilege log and any additional briefing as to why specific documents should not be produced, but such filing should not delay Dr. Kelsh's deposition or the production of documents over which there is no dispute.

### B.      The Motion to Stay

For the same reasons the Court does not find that the Applications are an attempt to circumvent foreign proof-gathering restrictions, it also finds Respondents' arguments for a stay unpersuasive.  Even if the Tribunal responds to Chevron's July 29, 2011 request to "(1) confirm that both parties to this Arbitration will have ample time and opportunity to serve document requests upon each other in this Arbitration, and (2) schedule a telephone conference to establish a procedural schedule for document production in this Arbitration," see Dettmer Decl. Ex. 5 (July 29, 2011 letter), that response will not likely relate to the production of documents by (nor to the deposing of) third parties such as Dr. Kelsh.

---

[7] As to Respondents' assertion that, if the Court grants the Applications, Chevron reserves the right to apply for reciprocal discovery, Opp'n (dkt. 23) 18-19, the Court will not rule on a matter not presently before it.

**United States District Court**
For the Northern District of California

1    If, however, the Tribunal not only addresses the taking of discovery from third parties

2    but states that it is not receptive to any discovery gained from these Applications,

3    Respondents are invited to renew their Motion.  As the Northern District of Florida recently

4    found in response to Respondents' same arguments: "There is no need to await discovery

5    that might occur before the foreign tribunal, or even to await that tribunal's determination

6    that it has jurisdiction," as "a proceeding need only be 'within reasonable contemplation.'"

7    See In re Application of the Republic of Ecuador, No. 4:11-mc-00073-RH/WCS at 9 (citing

8    In re Veiga, 746 F. Supp. 2d 8, 23 (D. D.C. 2010)).  The Tribunal is, of course, free to

9    ultimately decide that it will not accept the discovery.  See Intel, 542 U.S. at 262 ("the

10   foreign tribunal can place conditions on its acceptance of the information to maintain

11   whatever measure of parity it concludes is appropriate").  As of now, the Motion to Stay

12   lacks merit.

13   **III.    CONCLUSION**

14   For the foregoing reasons, the Court GRANTS the Applications under 28 U.S.C. §

15   1782 (dkt. 1), and DENIES the Motion to Stay (dkt. 29).

16   **IT IS SO ORDERED.**

17

18   Dated: September 23, 2011                          _____
                                                        CHARLES  R. BREYER
                                                        UNITED STATES DISTRICT JUDGE
19

20

21

22

23

24

25

26

27

28