IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

*In re* Applications of:

THE REPUBLIC OF ECUADOR and DR. DIEGO GARCIA CARRION, the Attorney General of the Republic of Ecuador,

Applicants,

For the Issuance of Subpoenas Under 28 U.S.C. § 1782 to Dr. Michael A. Kelsh and Exponent, Inc. d/b/a Delaware Exponent, Inc.,

Respondents.

No. C 11-80171 CRB
C 11-80172 CRB

**ORDER GRANTING 28 U.S.C. § 1782 APPLICATIONS AND DENYING MOTION TO STAY**

Now pending before the Court are two 28 U.S.C. § 1782 Applications by the Republic of Ecuador and Dr. Diego Garcia Carrion, the Attorney General of the Republic of Ecuador, ("Applicants"), seeking the issuance of subpoenas to Dr. Michael A. Kelsh and to Exponent, Inc., Kelsh's former employer.[1] See Case No. 11-80171 App. (dkt. 1); Case No. 11-80172 App. (dkt. 1). As explained below, the Court finds that Applicants have met their minimal burden under § 1782 and so their Applications will be granted. The Court further finds that the Motion to Stay filed by Intervenor Chevron Corporation, Dr. Kelsh and Exponent (for the

---

[1] Applicants have filed nearly identical Applications because, they explain, they believe that Dr. Kelsh has recently left Exponent and they wish "to ensure that all documents related to Dr. Kelsh's work for Chevron, including his report, are produced, whether they belong to Dr. Kelsh or to Exponent." See Case No. 11-80172 Mem. (dkt. 2) at 2 n.2. This Order will not distinguish between the two Applications unless relevant.

sake of simplicity the Court will refer to all three as "Respondents"), Case Nos. 11-80171 and 11-80172 Mot. (dkt. 29), is without merit, and will deny that Motion.

## I. BACKGROUND

Although their views on both subjects are diametrically opposed, the parties are well familiar with both the history of Chevron's oil exploration in Ecuador, and the various legal disputes resulting therefrom. See Case No. 11-80171 Mem. (dkt. 2) at 4-18; Opp'n (dkt. 23) at 4-10. The Court will therefore not endeavor to recount those histories here, but will focus instead on the narrow issue before it: the Applicants' desire to take discovery from Dr. Kelsh and Exponent to use in Chevron Corporation and Texaco Petroleum Corporation v. The Republic of Ecuador, PCA Case No. 2009-23, the Bilateral Investment Treaty ("BIT") arbitration.

During the course of the Lago Agrio litigation, Chevron relied on the reports of Dr. Kelsh, then an employee of Exponent, to rebut the Lago Agrio plaintiffs' expert reports about environmental pollution. Mem. (dkt. 2) at 1-2. Specifically, Dr. Kelsh disagreed with the plaintiffs' arguments that environmental contamination resulted in increased cancer deaths and other health problems to the indigenous population, and that Chevron should pay for new healthcare and medical monitoring infrastructure. Id. at 2. Nonetheless, as part of its multi-billion dollar judgment against Chevron, the Lago Agrio court ordered Chevron to pay $1.4 billion for a new healthcare infrastructure and $800 million for cancer treatment. Id. at 14-15.

Chevron subsequently referenced and submitted at least two of Dr. Kelsh's expert reports from the Lago Agrio action in the BIT arbitration. See Bloom Decl. (dkt. 4) Exs. 49, 50. Chevron used Kelsh's reports, among other expert reports, to dispute the validity of the Lago Agrio plaintiffs' expert and to argue that the scientific evidence in the Lago Agrio trial record so strongly supported Chevron's position that that court's decision could only have been based on fraud and/or corruption. See Dettmer Decl. (dkt. 23-1) Ex. 19 (Claimant's Memorial on the Merits) ¶ 1 ("This singular investment dispute arises from an unprecedented, fraudulent, and corrupt campaign of legally and factually baseless civil

2

litigation and bad-faith criminal prosecution . . ."); ¶ 141 ("Chevron's experts conducted analyses of a broad range of chemical components indicative or potential risk to human health . . . . The results of this comprehensive risk evaluation showed that the soil, sediments and water affected by the Consortium's historical oilfield operations do not pose a measurable risk to the health of local residents or workers."); ¶ 240 ("Chevron retained experts who – unlike Mr. Cabrera – are highly qualified in the subject matters covered in the two Cabrera reports. Each of these experts prepared and filed detailed rebuttals, enumerating the many flaws in the facts, methodologies, and conclusions contained in the Cabrera reports").[2]

Applicants now seek to take discovery from Dr. Kelsh and Exponent for use in the BIT arbitration. See Case No. 11-80171 App. (dkt. 1); Case No. 11-80172 App. (dkt. 1). Respondents oppose, see Opp'n (dkt. 23), and move the Court to stay the Applications pending a discovery ruling by the treaty arbitration tribunal, see Mot. (dkt. 29).

## II. DISCUSSION

This Order will discuss the two Applications and then, briefly, the Motion to Stay.

### A. The § 1782 Applications

#### 1. Authority to Issue Subpoenas

A district court may grant an application under 28 U.S.C. § 1782 where (1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made; (2) the discovery is for use in a foreign tribunal; and (3) the application is made by a foreign or international tribunal or "any interested person." 28 U.S.C. § 1782. Respondents do not dispute that these statutory requirements have been met. See Opp'n (dkt. 23) at 10 (arguing only as to discretionary factors).

In addition, the Court finds that the statutory requirements have been met. First, Exponent maintains an office in Menlo Park, California, which is in this district. See Case No. 11-80172 Mem. (dkt. 2) at 18 (citing Bloom Decl. Ex. 45). Dr. Kelsh resides in

---

[2] Chevron, Dr. Kelsh and Exponent add that Chevron "included among the 306 exhibits" attached to Chevron's Memorial on the Merits the two expert reports by Dr. Kelsh because it is standard practice to submit reference materials in arbitral proceedings. Opp'n (dkt. 23) at 10.

Pleasanton, California, and resides in San Francisco, California, both of which are in this district. See Case No. 11-80171 Mem. (dkt. 2) at 18 (citing Bloom Decl. Ex. 45). Second, the discovery Applicants seek from Kelsh and Exponent is intended for use in the BIT arbitration. Mem. (dkt. 2) at 18; In re Republic of Ecuador, No. C-10-80225 MISC CRB (EMC), 2010 WL 3702427, at *3 (N.D. Cal. Sept. 15, 2010) ("arbitration pending in a tribunal established by an international treaty constitutes a foreign tribunal for purposes of § 1782."). And third, Applicants are interested persons, as the Republic of Ecuador is the Respondent in the arbitration, see Intel Corp. v. Advanced Micro Devices, Inc., 542 U.S. 241, 256 (2004) ("No doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782."), and Dr. Carrion is the legal representative of the Republic in the arbitration, see In re Application of the Republic of Ecuador, 2010 WL 4973492, at *5; In re Letter of Request from Crown Prosecution Serv., 870 F.2d 686, 690 (D.C. Cir. 1989).

Nonetheless, a court "is not required to grant" an application "simply because it has the authority to do so." See Intel, 542 U.S. at 264.

### 2. Discretionary Factors

The Supreme Court instructs district courts to consider four discretionary factors when evaluating 1782 Applications: (1) whether the person from whom discovery is sought is a participant in the foreign proceedings; (2) the nature and character of the foreign proceedings and whether they will be receptive to the court's assistance; (3) whether the discovery is an attempt to circumvent foreign proof-gathering restrictions; and (4) whether the discovery will be unduly intrusive or burdensome. See Intel, 542 U.S. at 264-65. Respondents here dispute three of the four discretionary factors. See Opp'n (dkt. 23) at 10-19.

As to the first factor, "when the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant." Intel, 542 U.S. at 264. Respondents do not assert that Dr. Kelsh and Exponent are participants; rather, they argue that the materials Applicants seek are otherwise available to the Tribunal. Opp'n (dkt. 23) at

4

11-12 (citing In re Request for Judicial Assistance, 748 F. Supp. 2d 522, 526 (E.D. Va. 2010)). However, in seeking to demonstrate that availability, Respondents cite to rules relating to parties, see Opp'n (dkt. 23) at 12 (citing, e.g., UNCITRAL Arbitration Rules Art. 24.3 (1976) ("'At any time during the arbitral proceedings the arbitral tribunal may require the parties to produce documents'"), and Dr. Kelsh and Exponent are not parties to the arbitration. The Court understands that the Tribunal has the power to order party participants to produce documents. See International Bar Association Rules on the Taking of Evidence in International Arbitration, Art. 3.2, 3.3; UNCITRAL Arbitration Rules, Art. 24.3. However, the Court's review of the procedure Respondents point to as "governing document production from non-parties," see Opp'n (dkt. 23) at 14, premises involvement by the Tribunal on a party's not being able to obtain the documents on its own. See International Bar Association Rules on the Taking of Evidence in International Arbitration, Art. Article 3.9.[3] Obtaining documents "on [their] own" is what Applicants are seeking to do here, appropriately. See also In re Application of the Republic of Ecuador, No. 4:11-mc-00073-RH/WCS at 6 (N.D. Fla. Aug. 24, 2011) (similarly interpreting "on its own" language).

Respondents further argue that "because Dr. Kelsh was retained by Chevron to work in the Lago Agrio litigation, his documents regarding his work for Chevron are within Chevron's control." Opp'n (dkt. 23) at 12. That argument is unconvincing, however, as it relies entirely on Alper v. United States, 190 F.R.D. 281, 283 (D. Mass. 2000), a case in which the District of Massachusetts found that under Federal Rule of Civil Procedure 34, a party is deemed to be in control of the documents of its testifying expert. But Respondents point to no authority suggesting that the Federal Rules apply to the BIT arbitration, they explicitly state that "Chevron has not designated Dr. Kelsh as an expert witness who will testify in the Treaty Arbitration," see Opp'n (dkt. 23) at 10, they do not represent that

---

[3] Article 3.9 begins: "If a Party wishes to obtain the production of Documents from a person or organisation who is not a Party to the arbitration and from whom the Party cannot obtain the Documents on its own, the Party may, within the time ordered by the Arbitral Tribunal, ask it to take whatever steps are legally available to obtain the requested Documents. . ."

Applicants could take Dr. Kelsh's deposition through the arbitral procedures, and they have not represented that Chevron has control over <u>all</u> of the documents sought in the subpoena.[4]

The first factor therefore weighs in the Applicants' favor.

As to the second discretionary factor, there is no evidence before the Court of whether the foreign Tribunal will be receptive to the Court's assistance. The Court notes, however, that Chevron has apparently sought extensive 1782 applications of its own before other United States courts and thereby either implicitly or explicitly asserted receptivity. See, e.g., In re Application of Chevron Corp., No. 10-4699, 2011 WL 2023257, at n.7 (3d Cir. May 25, 2011) (stating that Chevron has taken over twenty similar 1782 depositions); In re Application of Chevron, Case No. 10-mi-76-TWT, at *9-10 (N.D. Ga. Mar. 2, 2010) (granting Chevron's 1782 application for discovery from plaintiffs' expert in Lago Agrio case); see also In re Republic of Ecuador, 2010 WL 3702427, at *4 ("Chevron has made § 1782 requests before other U.S. federal courts . . . and does not appear to have made any contention that the arbitral tribunal would not be receptive."). The second factor is therefore either neutral or slightly favors the Applicants.

As to the third discretionary factor, Respondents assert that the Applications are an attempt to circumvent foreign proof-gathering restrictions. See Opp'n (dkt. 23) at 13-14. Respondents charge Applicants with resisting discovery in the BIT arbitration, "stating [they] would 'not incur the expense of instructing [their] lawyers to proceed to the merits of this case unless and until [they are] obliged to do so,'" while simultaneously asking this Court to step in and initiate discovery. Id. at 14; Mot. (dkt. 29) at 2 ("ROE is speaking out of both sides of its mouth – seeking 'urgent' one-sided discovery in U.S. Courts for use in the Treaty Arbitration, while at the same time arguing to the Tribunal that mutual discovery in the

---

[4] See, e.g., Subpoena (dkt. 1 Ex. 1) at 8 ("Copies of any expert reports, declarations, affidavits, deposition transcripts, trial transcripts, hearing transcripts, arbitration transcripts or any other transcript of any testimony or any document you authored that YOU have offered as an expert at any time during the last ten years, regardless of the nature of the dispute.").

6

Treaty Arbitration is premature and inappropriate."). Respondents further accuse Applicants of forum-shopping. Opp'n (dkt. 23) at 13-14.[5] The Court disagrees with Respondents.

As already discussed, Respondents point to no arbitration guidelines relating to obtaining discovery from third parties that are in conflict with what Applicants are doing herein. See International Bar Association Rules on the Taking of Evidence in International Arbitration, Art. Article 3.9 (premising involvement by the Tribunal on a party's not being able to obtain the documents on its own); see also In re Application of the Republic of Ecuador, No. 1:11-cv-01470-WYD-MEH at 4 (D. Colo. Aug. 9, 2011) ("[T]he Court does not perceive that this request is an attempt to circumvent foreign discovery restrictions, as the arbitral rules do not appear to apply to Mr. Bjorkman in the first place."); In re Application of the Republic of Ecuador, No. 4:11-mc-00073-RH/WCS at 7 ("Chevron has not shown that a subpoena for documents from Dr. Hinchee and a subpoena for is deposition would 'circumvent foreign proof-gathering restrictions or other policies' of the arbitral tribunal as those words were intended in Intel.").

Moreover, Applicants' actions even as described by Respondents – pushing for discovery through these Applications and resisting discovery before the Tribunal – is consistent with Applicants' reluctance to proceed in the arbitration before its jurisdiction has been satisfactorily established. Applicants explained this "conundrum" to the Tribunal:

> The duration of the discovery actions has created a conundrum for the Republic. On the one hand, for all of the reasons previously represented, the Republic does not wish

---

[5] These same accusations animate Chevron's Motion to Stay, which further represents that "[a]t Chevron's request, the Tribunal has taken up the question of discovery procedures and schedules in the Treaty Arbitration," and that "[a]bsent a stay," a grant of the Applications risks conflicting with the Tribunal's procedure. Mot. at 2. That is not the Court's understanding of what is happening. Chevron's July 29, 2011 letter asks the Tribunal to "(1) confirm that both parties to this Arbitration will have ample time and opportunity to serve document requests upon each other in this Arbitration, and (2) schedule a telephone conference to establish a procedural schedule for document production in this Arbitration." See Dettmer Decl. Ex. 5 (July 29, 2011 letter). The Tribunal responded on August 7, 2011, by stating that the first request "does not, by itself, strike the Tribunal as controversial; but before responding more fully," invited Applicants to respond. See Dettmer Decl. Ex. 6 (August 7, 2011 email) at 1. Respondents did, on August 12, 2011, to object to Chevron's request as premature in light of the Tribunal's not having yet ruled on its jurisdiction. Dettmer Decl. Ex. 4 (August 12, 2011 letter) at 1. The parties have each sent additional letters to the Tribunal. See Lapping Decl. Exs. 1, 2. To the extent the Tribunal has responded any further, the parties have not brought such response to the Court's attention. However, the Court would not characterize the Tribunal's August 7, 2011 email as "tak[ing] up the question of discovery procedures and schedules in the Treaty Arbitration." See Mot. at 2.

7

to expend any sum on merits preparation unless this Tribunal assumes jurisdiction of the dispute and identifies the remaining issues, if any. On the other hand, in light of Chevron's ability to delay resolution of the discovery actions (while simultaneously seeking to expedite the arbitral proceedings), a failure by the Republic to commence the discovery actions at this time would threaten the Republic's ability to obtain the requested discovery in time for its possible use in the merits phase of the arbitration, should there be one.

Dettmer Decl. Ec. 4 (August 12, 2011 letter) at 1 n.1. Applicants' Applications are no doubt the result of strategy (one of pursuing discovery through the permissive standards of § 1782 rather than through an aribitral tribunal whose jurisdiction they do not concede), but that does not mean they are the result of forum-shopping. Applicants do not appear to be seeking discovery for an improper purpose, but for use in the arbitral proceeding if and when it reaches the merits phase. Accordingly, this factor weighs in their favor. See Minatec Fin. S.A.R.L. v. SI Group Inc., No. 1:08-cv-269 (LEK/RFT), 2008 WL 3884374, at *8 (N.D.N.Y. Aug. 18, 2008) (question is whether discovery is sought in bad faith).[6]

Finally, the fourth discretionary factor that district courts are to consider is whether the Applications are "unduly intrusive or burdensome." See Intel, 542 U.S. at 265. Such requests "may be rejected or trimmed." Id. The Court notes that three items in the subpoenas do appear overly broad and thereby unduly intrusive: in the Exponent subpoena, items 3 and 8 refer to materials prepared by Dr. Kelsh "or by any other person," and item 12 refers to documents "to or from . . . CHEVRON and/or . . . YOU or other experts." See Case No. 11-80172, dkt. 1 Ex. 1 at 8. In the Kelsh subpoena, the same language appears in items 3, 9, and 13. See Case No. 80171, dkt. 1 Ex. 1 at 8. Discovery relating to anyone other than Dr. Kelsh does not strike the Court as appropriate in the context of these Applications, and so such language is hereby stricken from the subpoenas. See In re Application of the Republic of Ecuador, No. 4:11-mc-00073-RH/WCS at 12 (holding same).

Respondents argue that the subpoenas are overbroad because they seek documents beyond the typical material that United States courts find relevant in assessing expert reports.

---

[6] Nor does Applicants' declination of Chevron's proposed stipulation demonstrate bad faith, see Dettmer Decl. Ex. 7 (August 10, 2011 letter); Applicants had reasonable bases for declining (for example, Chevron only offered to produce documents by Dr. Kelsh "to the extent ordered to do so by the . . . Tribunal," and in exchange would have had to withdraw their pending Applications with prejudice), see id.; Dettmer Decl. Ex. 9 (August 15, 2011 letter).

8

Opp'n (dkt. 23) at 15. Respondents ask the Court to apply the new and more restrictive Rule 26(b)(4)(C), and to limit Applicants' access to Dr. Kelsh's trial preparation documents. Id. at 15-16. Applicants respond that the old version of Rule 26 should apply, or, in the alternative, that Dr. Kelsh is a non-reporting testifying expert. Reply (dkt. 26) at 12. They also argue that all documents should be produced in order to expose attorney-caused bias, and add that Respondents cannot invoke privilege because they have not even provided a privilege log. Id. at 13. The Court does not view Respondents' objections as reasons to deny the Application and agrees that they are best addressed in connection with a privilege log and some more detailed briefing.

In the meantime, the fourth factor weighs, too, in favor of Applicants.

### 3. Conclusion as to the Applications

Based on its review of the statutory and discretionary factors, the Court finds that the Applications should be granted.[7] Respondents are directed to make Dr. Kelsh available for a deposition forthwith, and to begin the production of documents. Respondents may file a privilege log and any additional briefing as to why specific documents should not be produced, but such filing should not delay Dr. Kelsh's deposition or the production of documents over which there is no dispute.

### B. The Motion to Stay

For the same reasons the Court does not find that the Applications are an attempt to circumvent foreign proof-gathering restrictions, it also finds Respondents' arguments for a stay unpersuasive. Even if the Tribunal responds to Chevron's July 29, 2011 request to "(1) confirm that both parties to this Arbitration will have ample time and opportunity to serve document requests upon each other in this Arbitration, and (2) schedule a telephone conference to establish a procedural schedule for document production in this Arbitration," see Dettmer Decl. Ex. 5 (July 29, 2011 letter), that response will not likely relate to the production of documents by (nor to the deposing of) third parties such as Dr. Kelsh.

---

[7] As to Respondents' assertion that, if the Court grants the Applications, Chevron reserves the right to apply for reciprocal discovery, Opp'n (dkt. 23) 18-19, the Court will not rule on a matter not presently before it.

9

If, however, the Tribunal not only addresses the taking of discovery from third parties but states that it is not receptive to any discovery gained from these Applications, Respondents are invited to renew their Motion. As the Northern District of Florida recently found in response to Respondents' same arguments: "There is no need to await discovery that might occur before the foreign tribunal, or even to await that tribunal's determination that it has jurisdiction," as "a proceeding need only be 'within reasonable contemplation.'" See In re Application of the Republic of Ecuador, No. 4:11-mc-00073-RH/WCS at 9 (citing In re Veiga, 746 F. Supp. 2d 8, 23 (D. D.C. 2010)). The Tribunal is, of course, free to ultimately decide that it will not accept the discovery. See Intel, 542 U.S. at 262 ("the foreign tribunal can place conditions on its acceptance of the information to maintain whatever measure of parity it concludes is appropriate"). As of now, the Motion to Stay lacks merit.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS the Applications under 28 U.S.C. § 1782 (dkt. 1), and DENIES the Motion to Stay (dkt. 29).

**IT IS SO ORDERED.**

Dated: September 23, 2011

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE