Eric W. Bloom (admitted *pro hac vice*)
Nicole Y. Silver (admitted *pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006
Telephone: (202) 282-5000
Facsimile: (202) 282-5100
ebloom@winston.com
nsilver@winston.com

Attorneys for Applicants,
THE REPUBLIC OF ECUADOR and
DR. DIEGO GARCÍA CARRIÓN,
THE ATTORNEY GENERAL OF
THE REPUBLIC OF ECUADOR

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| *In re* Application of: | **Case No.** C 11-mc-80171 CRB |
| THE REPUBLIC OF ECUADOR and DR. DIEGO GARCÍA CARRIÓN, the Attorney General of the Republic of Ecuador, | **APPLICANTS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DR. MICHAEL A. KELSH PURSUANT TO FRCP 37** |
| Applicants, | |
| For the Issuance of a Subpoena Under 28 U.S.C. §1782 to DR. MICHAEL A. KELSH for the Taking of a Deposition and the Production of Documents in a Foreign Proceeding | Date: January 16, 2013<br>Time: 1:00 p.m.<br>Judge: Hon. Nathanael Cousins<br>Courtroom: A |
| Respondent. | |

**Related Cases:**

- *In re Application of Yaiguaje, et al.*, C-11-MC-80087 CRB ("Yaiguaje Mason 1782")
- *In re Application of Yaiguaje, et al.*, C-10-MC-80324 CRB ("Yaiguaje Borja 1782")
- *In re Application of the Republic of Ecuador, et al.*, 10-MC-80225-CRB ("ROE Borja 1782")
- *In re Application of The Republic of Ecuador, et al.*, C-11-MC-80110 CRB ("ROE Mason 1782")
- *In re Application of the Republic of Ecuador, et al.*, 11-MC-80172-CRB ("ROE Exponent 1782")

This Court — and every other court to address these issues — has held that Chevron and its experts may withhold only two categories of documents under the work product doctrine: (1) attorney-expert communications containing attorney mental impressions and (2) the expert's draft reports. *In re Republic of Ecuador* (Kelsh), 280 F.R.D. 506, 512-13 (N.D.Cal. 2012); *id*. at 514-15; *Republic of Ecuador v. Bjorkman*, No. 11-cv-1470-WYD-MEH, 2012 WL 12755, at *4, 6 (D. Colo. Jan. 4, 2012); *Ecuador v. Bjorkman*, No. 11-cv-1470, 2013 WL 50430 at *2 (D. Colo. Jan. 3, 2013); *In re Republic of Ecuador* (Hinchee), No. 11-mc-73-RH-WCS, 2012 WL 5519611 at *5 (N.D. Fla. Nov. 2, 2012). All other documents considered by a testifying expert must be produced.

Despite these multiple, clear rulings, Chevron and its expert here continue to withhold documents that fall into neither of the protected work product categories.

The Republic's primary opportunity to respond to Chevron's arbitral allegations (in which more than $19 ***billion*** is in controversy) is now one month away. The Republic therefore respectfully asks that this Court require Respondents to produce promptly those documents Respondents wrongfully continue to withhold. This Court should also follow the lead of other courts addressing Chevron's discovery practices and review *in camera* all remaining withheld documents to ensure compliance with this Court's Order of March 9, 2012.

## I. Respondents Continue To Withhold Improperly Two Categories Of Documents

Far from engaging in "gamesmanship," as Respondents contend,[1] the Republic's communication with Respondents' counsel was, appropriately, to ensure that Chevron would not repeat the fiasco it caused in parallel 1782 litigation in the District of Colorado. There, after the district court's order on the Republic's motion to compel, Chevron (and its expert, Bjorn Bjorkman) produced a new privilege log (their fifth in that litigation), which included documents never identified in any of their four previous privilege logs and offered new descriptions of literally hundreds of documents. Equally concerning, Chevron identified in their fifth privilege log scores of "draft reports" when those same documents had in the previous logs been described as memoranda, notes, and memos.[2]

---

[1]  *See* Opp. at 2.
[2]  *See Ecuador v. Bjorkman*, No. 11-cv-1470, 2013 WL 50430 (D. Colo. Jan. 3, 2013).

2

APPLICANTS' REPLY ISO MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM MICHAEL A. KELSH
IN RE APPLICATION OF REPUBLIC OF ECUADOR, 11-MC-80171 CRB

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

In this action, Respondents offered their December 2011 privilege log as an allegedly adequate assertion of their privilege claims. The Republic and this Court thereafter relied on that assertion in adjudicating and resolving the Republic's Motion to Compel. Since the documents on that log have not changed, the privileges allegedly protecting them likewise could not have changed. Therefore there was no need to change the log; Respondents sought only to confirm that understanding. And Respondents agreed with the Republic when counsel responded by telephone to the Republic's email. Simply put, what was adequate then should be adequate now — that is not gamesmanship.

With respect to the first group of documents, Respondents continue to withhold at least 17 communications between Dr. Kelsh and his assistants and unprotected people (Chevron's employees, Chevron's contractors, and Chevron's other experts) that also include protected people (attorneys or other Exponent employees). As shown below, Respondents in fact had the burden to establish that the documents are protected on the basis of their privilege log representations. By failing to indicate that any of these communications include attorney mental impressions or theories, Respondents have plainly failed to carry their burden. Moreover, and independently, Respondents must produce these documents because this Court has already ordered production of communications between Kelsh and people on every one of the emails at issue.

Respondents address the first of these propositions but fail to address the second at all. We address both immediately below.

### A. All But Attorney-Expert Communications Containing Attorney Mental Impressions Must Be Produced

**First**, as this Court has recognized, "[t]he party seeking to invoke the work product doctrine bears the burden of establishing all the requisite elements, and any doubts regarding its application must be resolved against the party asserting the protection." *Kelsh*, 280 F.R.D. at 514. Because "[t]he intention of the work product rule is to protect the mental impressions and legal theories of a party's attorney, not its experts," Respondents must show that the communications they withhold contain the mental impressions of counsel, not the experts. *Id.* at 513. But nowhere in Respondents' privilege log is there any representation, or even indication, that communications with attorneys

3

APPLICANTS' REPLY ISO MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM MICHAEL A. KELSH
IN RE APPLICATION OF REPUBLIC OF ECUADOR, 11-MC-80171 CRB

contain the *attorney's* mental impressions.  Respondents' non-specific assertions to the contrary are not adequate.

This requirement is not new.  The "the work product doctrine shelters the mental processes of *the attorney*, providing a privileged area within which he can analyze and prepare his client's case," and this has been true since the Supreme Court first upheld the work product doctrine.  *Kelsh*, 280 F.R.D. at 510 (emphasis added) (quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975)).  Respondents suggest that they would have "alter[ed] the revised privilege log to explicitly state that these communications include the 'theories or mental impressions of counsel'"[3] had the Republic not confirmed that no new privileges should be added to the privilege log — as if the obligation to include on their privilege log attorney mental impressions did not exist until after this Court's March 2012 Order.  But it was their burden when they submitted their December 2011 privilege log to provide the *prima facie* facts establishing that the documents are covered by work product.  There is no reason now, after 18 months of litigation and after this Court has already ruled on the first Motion to Compel, to afford Respondents yet another chance to add to their privilege claims.  If the documents did not contain counsel's mental impressions in 2011, then they still do not and are still not protected.

**Second**, each and every one of the documents that the Republic seeks to compel was sent to or from persons this Court has already found fall outside of any Rule 26 protections.  As this Court already held:  "communications among non-attorney Chevron employees and Kelsh are not work product and simply labeling them 'work product' . . . does not suffice."  *Kelsh*, 280 F.R.D. at 515.  "Nor does protection exist for communications between an expert witness and a consulting expert." *Id*. at 515-16.  And finally, "[t]he amendments to Rule 26 provide no change in the discovery of communications between Kelsh/Exponent and other Lago Agrio testifying experts." *Id*.  Despite these clear rulings, the communications at issue between and among Dr. Kelsh and these groups of unprotected individuals continue to be withheld.

Again, this Court and its sister district courts have appropriately drawn bright lines.

---

[3] Opp. at 3.

4

Communications with non-attorneys are not privileged because they do not include *counsel's* mental impressions. And the inclusion of counsel on the communications will not afford protection absent the disclosure of *counsel's* mental impressions. For that same reason, communications *from the expert to counsel* are not likely to be protected because the disclosure of the *expert's theories* is fair game in discovery — indeed, that is the very purpose of expert discovery.

### B. Only Draft Reports By Dr. Kelsh/Exponent Are Protected

With respect to the second group of documents — "draft reports" of experts other than Dr. Kelsh that Dr. Kelsh considered in preparing his report — Respondents ignore the well-settled proposition, endorsed in the Advisory Committee Notes to the amended Rule 26, that documents considered by the expert in forming his opinions must be produced. *See* Fed. R. Civ. P. 26 (2010 Amendment Advisory Committee Notes) ("Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions. "). The Advisory Notes also provide:

> [T]he intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

*Id.* (emphasis added); *see also* Dkt. 97 at 4.

Once an expert is designated as a testifying expert — like Dr. Kelsh was for the *Lago Agrio* litigation — any protections afforded to documents considered by the expert are waived. Because they will be deposed and will testify under Rule 26(b)(4)(A), and the very purpose of disclosure to a testifying expert is to inform an expert's opinion and testimony before a court, disclosure to or communications with testifying experts in connection with the development of their opinions have long been deemed a waiver of any applicable privilege. *In re Pioneer Hi-Bred Intern. Inc.*, 238 F.3d 1370, 1375-76 (Fed. Cir. 2001) ("because any disclosure to a testifying expert in connection with his testimony assumes that privileged or protected material will be made public, [*United States v.*] *Cote*, 456 F.2d [142,] 144-45 & n. 3 [(8th Cir. 1972)], there is a waiver to the same extent as with any other disclosure"); *In re Chevron Corp.* (*U.B.R.*), 633 F.3d 153, 165 (3d Cir. 2011) ("We agree with the District Court that . . . '[b]y providing consulting expert reports to a testifying expert, the

5

APPLICANTS' REPLY ISO MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM MICHAEL A. KELSH
IN RE APPLICATION OF REPUBLIC OF ECUADOR, 11-MC-80171 CRB

Winston & Strawn LLP
101 California Street
San Francisco, CA  94111-5802

privilege is lost'"); *id*. at 164 n.3; *Johnson v. Gmeinder,* 191 F.R.D. 638, 647 (D. Kan. 2000) ("any type of privileged material, including materials or documents prepared by a non-testifying expert, lose their privileged status when disclosed to, and considered by, a testifying expert.").

While this Court noted that "[t]o qualify as work product under Rule 26(b)(4)(B), draft reports must be authored or co-authored by Dr. Kelsh, Exponent, or other reporting experts in the underlying litigation," *see* Dkt. 99 at 7 (quoting *Kelsh*, 280 F.R.D at 513), the Court's observation merely restated the general rule shielding draft reports by Dr. Kelsh and his co-authors from disclosure. Nothing in the Court's Order permitted Chevron to withhold the 27 draft reports authored by others that were later considered by Dr. Kelsh in the formulation of his expert opinions submitted to the Lago Agrio Court. In the absence of an adverse finding, the Republic had no reason to appeal this Court's Order.

If in fact a testifying expert could "consider" draft expert reports of other experts in formulating his opinions and in preparing his report yet simultaneously shield those draft reports from discovery, then an expert could submit a report under his own name relying exclusively on "draft expert reports" of others, and yet his litigation adversary would not be entitled either to obtain the draft reports on which he relied or even to question him on his opinions.[4] Expert discovery would be rendered an exercise in futility. Not surprisingly, Respondents can cite to not a single decision of any court that has adopted such a view or sanctioned such a practice.

This Court aptly noted that "[t]he amendments to Rule 26 provide no change in the discovery of communications between Kelsh/Exponent and other Lago Agrio testifying experts." *Kelsh*, 280 F.R.D. at 516. If Chevron had wanted to preserve the sanctity of draft reports of its testifying experts, it was incumbent upon Chevron to withhold those reports from other testifying experts until the reports were final. That it chose instead to share "draft reports" with Dr. Kelsh (and presumably others) so that Dr. Kelsh could consider and rely upon them render these drafts absolutely discoverable under Rule 26.

---

[4] It is of course common practice for litigation counsel to *refrain* from sharing draft reports among testifying experts for precisely this reason.

6

APPLICANTS' REPLY ISO MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM MICHAEL A. KELSH
IN RE APPLICATION OF REPUBLIC OF ECUADOR, 11-MC-80171 CRB

## II. In Camera Review Will Resolve Chevron's False Work Product Claims

While Chevron contends that further *in camera* review is "unnecessary" and "a waste of the Court's resources," Opp. at 8, courts in parallel discovery proceedings have flatly rejected Chevron's pleas and proceeded to conduct an *in camera* review of Chevron's experts' withheld documents. Chevron thus has no answer to Judge Hinckle's determination that 39 of 40 documents produced by Chevron *in camera* were wrongfully withheld, or to Judge Hinckle's insistence that *any* document "for which [Chevron] continues to claim privilege" must be submitted for *in camera* review. *Hinchee*, 2012 WL 5519611 at *1-2. Nor does Chevron address Magistrate Judge Hegarty's decision of just last week requiring Chevron to produce *in camera* any documents Chevron has chosen to withhold either as "draft reports" or as email communications that allegedly contain counsel's theories or mental impressions. *Republic of Ecuador v. Bjorkman*, 11-cv-01470, at 6-7 (Jan. 3, 2013).

Indeed, this Court's own earlier *in camera* review highlights the need, as these other courts have already found, to conduct an *in camera* review of the still withheld documents to ensure Respondents' compliance with this Court's Order.[5] For their part, Respondents have failed to identify *any* prejudice they would suffer as a result. In sum, given the amount in controversy (at least $19 billion) in the arbitration, Chevron's spotty compliance record with discovery orders, and the relatively small pool of documents that would need to be reviewed, Respondents' effort to avoid this Court's further *in camera* review should be rejected.

## III. Additional Deposition Time Is Warranted Here Because Respondents Wrongly Withheld Over 600 Documents

Over a year after their original production Respondents produced 684 documents totaling

---

[5] The Court found, based on its review, that (1) document MAK_PL00029 "is a review of recent reports and publications" rather than a "draft report authored by a consultant epidemiologist" as represented by Respondents, *Kelsh*, 280 F.R.D. at 514; (2) other alleged "draft reports" are instead "fact notes or memoranda," *id.* at 513; and (3) certain withheld email communications, "including those in which attorneys are copied, including those in which attorneys are copied, *e.g.*, MAK_PL000703 and MAK_PL000715, are not work product and must be disclosed." *Id.* at 515. This Court warned that Respondents may not "cloak[]" correspondence "as communications between 'Chevron's litigation team members' and other Chevron 'agents' to fit within the confines of Rule 26(b)(2)," *id.* at 516, and expressly ordered Respondents to produce those documents "mislabeled as draft reports[.]" *Id.* at 514.

Winston & Strawn LLP
101 California Street
San Francisco, CA 94111-5802

3,940 pages that this Court determined were wrongly withheld. In addition to those documents Respondents continue to withhold many more either in their entirety or through redactions. Simply stated, the Republic has never before been afforded the opportunity to question Dr. Kelsh on the nearly 4000 pages that were just recently produced. As this Court recognized during the hearing in December, improper withholding of these documents is alone good cause to extend the deposition time. *See Republic of Ecuador v. Bjorkman*, No. 11-cv-1470-WYD-MEH, 2012 WL 12755, at *6 (D. Colo. Jan. 4, 2012) (ordering additional deposition time due to volume of documents produced in part as a result of a similar motion to compel). Indeed, since December, 2011 Respondents, including Dr. Kelsh, have been on notice that "if I do order more documents to be produced after my review of the privilege logs, that I am inclined to then give you more time for the deposition." Hr'g Tr. 62:6-11. Any other result would reward Respondents' decision to withhold thousands of pages that this Court (and Judge Breyer) found are not protected.[6]

## CONCLUSION

For the foregoing reasons, the Republic respectfully requests that the Court grant its Motion and order production of the documents listed in the Respondent's privilege log forthwith.

Dated: January 11, 2013

          Respectfully submitted,

*/s/ Eric W. Bloom*
Eric W. Bloom (*pro hac vice*)
Nicole Y. Silver (*pro hac vice*)
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, DC 20006
Phone: (202) 282-5000
Fax: (202) 282-5100
E-mail: ebloom@winston.com
E-mail: nsilver@winston.com

*Attorneys for Applicants*

---

[6] Respondents accuse counsel for the Republic for supposed "lack of preparation and attendant waste of deposition time." Opp. at 8. Should this Court wish to review the deposition transcript, the Republic will gladly submit it for review.